Pickles vs. Dry Dock Company.

## No. 9525.

## THOMAS PICKLES VS. MCLELLAN DRY DOCK COMPANY ET ALS.

Under its police power, the State has the right to recall and abrogate any powers previously conferred on any municipal corporation and to vest such powers in another and distinct State functionary.

Hence, the Legislature had the power to, as it did by the Act No. 7 of 1870, abrogate the Police Jury of the Parish of Orleans, right bank, and to vest powers of the same in the city of New Orleans, to which that territory including Algiers became henceforth attached.

Under that legislation, the city of New Orleans was clothed with the exclusive power and authority to regulate the use of the river banks on the right bank of the river in Algiers, and that power included the authority of allotting such space as in its discretion was necessary for a public ferry landing.

The legal exercise of that power is incompatible with the right of a riparian owner to encroach, for his personal use, on any portion of the space thus allotted for the use of a public ferry.

Such an attempt will be rebuked by the courts, and all obstructions of that nature must be removed.

The case of Watson vs. Turnbull, 34 Ann. 698, affirmed.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*Blanc & Butler* for Plaintiff and Appellee:

1. The defendant is bound by the same rules in pleading and in making proof as plaintiff; and an answer which merely refers to a contract as invalid, must state specific defects, or, on exception at the trial, defendants will not be allowed to prove any defects.

2. Defendants cannot attack collaterally a contract between plaintiff and the city of New Orleans; nor have they any interest or right to question such a contract.

3. Section 23, Acts 1870, No. 7, p. 40, refers to contracts requiring disbursements by the city of New Orleans, engagements where the interest of the city is to give the least price, to adjudicate to the "lowest bidder," as mentioned in this act. It has no reference to the sale of rights where the highest price is required: to leases, contracts for farming out, power to collect wharfage, to run ferries and the like. These are powers given in other sections of the charter, Sec. 23 being expressly made to regulate all cases where the city is the payer and her coffers are to be opened.

4. No riparian owner, within or without the city limits, can claim the power to exclude the public from the landing or bank fronting his property on the Mississippi river; nor can he permanently place a dry dock before the bank on his property. 6 Ann. 450; C. C. 455.

5. Within the corporate limits the city has had full power delegated to it to regulate the river front, assign landings, establish ferries and fix or appoint moorings, and in carrying out these powers it has full right to determine the amount of river frontage or water space required for its ferries.

6. Private right must yield to public needs, and for a public purpose (the city being the sole judge of necessity) the corporation can establish its ferry landings wherever in its opinion it is best to be. The municipal control dominates private claims. Dillon Mun. Corp., 3d ed , 107, 114; 5 Ann. 36; 6 Ann. 450; 8 R. 211; 18 La. 122; 5 Yerger, 189; 3 Ill. 53; 10 Wall. 502.

7. Even if plaintiff had no right to any ferry or landing, that would not entitle defendant to usurp the river front and monopolize the bank.

8. Aware of this, they pretend to a title from the Legislature by Acts 1840, p. 130, sec. 17, and its re-enactment in 1855. These acts give no such rights as defendants assert. They

invest the police jury with the control to clear away buildings and remove things from off the land, and have no reference to the water front or mooring of vessels, etc. Furthermore, these acts are the charter of a police jury, and contain a limitation on its powers. The police jury, with its limited powers, no longer exists; the city now controls, and without those limitations, under laws which make no exceptions. The Act of 1840, and its repetition, has long ago passed away—was repealed by the charters of the city, and cannot avail defendants even had the extinct laws ever had any reference or application to the matters like those at issue here.

*W. S. Benedict* for Defendants and Appellants.

The opinion of the Court was delivered by

POCHÉ, J.    Plaintiff, as lessee by transfer of the city of New Orleans, of a ferry known as the Third District Ferry, plying from the foot of Esplanade street to Olivier street, on the opposite bank, complains that the defendant Dry Dock Company has, by driving piles and locating a portion of their dock in front of his landing, illegally encroached on the space of one hundred and fifty feet allowed him under his contract for landing conveniences of his ferry-boat at the foot of Olivier street.

Hence, he brings this suit with a view to obtain redress through a judgment ordering the removal of the illegal obstructions interposed by the defendant company, and he cites the city to defend and protect him in the full enjoyment of his contract.

The city intervenes and joins plaintiff in his prayer for redress.

For answer the defendants plead the general issue, and specially urge their right to locate their dock and to drive piles in the bed of the river, as complained of, on the ground of the ownership by one of their incorporators of the riparian property in front of which they are operating, and on the authority of the Police Jury of the Parish of Orleans, right bank, under whose ordinances they had established their dry dock, which is a necessity of commerce and navigation, and that no part of the space occupied by them is necessary to the conveniences of the ferry.

They also allege that the piles, as driven by them, are beneficial and not injurious to the ferry landing, and that plaintiff has not complied with the contract which he has set up as the basis of his action.

They prosecute this appeal from a judgment in favor of plaintiff as prayed for.

The consideration of two bills of exceptions reserved by defendants involves the discussion, in a great measure, of all the law which governs the case.

The first bill grew out of defendants' objection to the introduction in evidence of the notarial contract of lease between the city and plaintiff, the objection being that the contract did not show on its face, and no

evidence had been offered to show, that the contract had been awarded in compliance with the clause of the city charter which provides that "all contracts for public works, or for materials or supplies ordered by the council, shall be offered by the controller at public auction, and given to the lowest bidder who can furnish security satisfactory to the council, or the same shall, at the discretion of the council, be advertised for proposals." *   *   *

The district judge correctly ruled that the objection went to the effect and not to the admissibility of the evidence. How could the court decide whether or not the document contained proof of the manner in which the contract had been concluded, without admitting and considering it in all its parts?

But referring the objection to the alleged nullity of the contract for the reason contended for, we look in vain in defendants' answer for any averment of such illegality; hence, they were correctly ruled out of a position which had not been set up in their pleadings. The practical result of defendants' contention on this point would be a judgment annulling and setting aside a contract between the city and a lessee of an important franchise, useful and almost indispensable to the public, by means of a collateral attack, in a suit which merely involves the question of the power of the city of New Orleans, within her corporate limits, to regulate and control the use of the river banks, and to restrict private parties in their claim of unbridled license to enjoy the use of said river banks as their interests may suggest.

That mode of attack of a contract finds no sanction in law, and it cannot be tolerated in practice.

These considerations are sufficient in themselves to dispose of all the positions assumed by the defendants touching the alleged illegality and nullity of plaintiff's contract, and they preclude all discussion of the grounds of such nullity.

The other bill involves the alleged error of the trial judge's ruling in excluding proffered evidence to show a dedication to public use by the police jury of the space sought to be occupied by the defendants, as necessary to commerce and navigation, to show the occupation by them under the rights of a riparian proprietor, and to show further that the space thus occupied was not necessary, and had never been adapted, to the use or conveniences of a public ferry, and the use of the same by the defendants and their predecessors for over fifty years.

There is no merit in this contention.

Under a proper exercise of its police power, the State had the undisputed right to recall and to abrogate all the authority previously

granted by the legislature to the former police jury of the parish of Orleans, (right bank) and to vest the same power in another and distinct State functionary. That is precisely the meaning and the practical effect of Act No. 7, of 1870, which incorporated that portion of the parish of Orleans in the city of New Orleans.

Under that legislation all the powers conferred to the city of New Orleans under its charter could be legally exercised over every foot of the territory which had thereby become a part of that city. Abascal et al. vs. Bouny, 37 Ann. 538. And among those powers, one of the most important was the right to regulate the use of the river banks, to establish and control wharves and ferries, and to designate the places of mooring for ships and steamboats.

It follows, therefore, that from the moment that Algiers became a portion of the city of New Orleans, all the previous ordinances of the police jury of the parish of Orleans, right bank, purporting to confer landing or mooring privileges, and which had been granted under a power since abrogated, had to yield in force and effect to the regulations of the council of the city of New Orleans on the same subject-matter, and that the latter alone became the law binding on all alike.

Numerous decisions of this Court, in perfect harmony with general jurisprudence on similar questions, have settled beyond the domain of possible discussion the doctrine that a city vested with the powers enumerated in the charter of the city of New Orleans has the undoubted and necessary power to regulate the use of the banks of any water course on which it borders, and that in this State such authority is not restricted by Article 455 of our code, which declares that "the use of the banks of navigable streams or rivers is public," and "that according everyone has a right freely to bring his vessels to land there," etc. It is now well settled that this general right must be modified and controlled by municipal regulations when adopted in conformity with chartered authority.

In the case of Watson et al. vs. Turnbull. 34 Ann. 856, (which singularly is not referred to by either counsel in this suit), we had occasion to examine our jurisprudence on this question.

The contention in that case on the part of plaintiffs was that the city of New Orleans had no right to place "hitching posts" along the river bank in front of their property, on the ground that they had already placed, at their own expense, all the posts that were required, and that there was no necessity of commerce requiring the placing of

such posts by the city, and that by such act the city would deprive the riparian owners of their free use of the banks of the river.

The Court held: "Within the corporate limits, the city of New Orleans, under her charter and under the general law, has the right to control, manage and administer the use of the river banks for the public convenience and utility, to establish wharves and landings." * * *

"Riparian proprietors have no right to appropriate to their exclusive use these banks, and they have no private property in the use thereof, which is public. The discretion of the city authorities in determining what are proper and needed facilities for commerce, and on what part of the river bank, within her limits, they should be established, is manifestly not a proper subject for judicial control or interference. Whatever incidental damage may result to proprietors from the exercise of these unquestionable corporate rights, is *damnum absque injuria.*"

We have taken the pains of making this copious extract from that opinion for the reason that it covers almost all the points which we are now discussing, and because it formulates a rule of law of easy understanding, as a logical result of numerous adjudications which we had examined, and to which we refer in the opinion.

We have carefully considered the authorities relied on by defendants, but they do not refer to cases which involved the corporate powers of the city of New Orleans to regulate the use of the river banks within its limits.

They can draw no more strength from the case of Ellerman vs. Morgan's R. R., 34 Ann. 698, as the point in contest herein was not involved in the issues therein discussed. We said there: "The case presently before this court is not one in which the city seeks to prevent the defendants from using their wharf in any manner, or to appropriate it and enjoy it for other purposes."

One of those questions is presented in the instant case, and that is the right of the city to prevent the defendant company from using its wharves and docks in a manner injurious to the public or in conflict with franchises or privileges emanating from her authority.

From the foregoing considerations it follows that under the law as it is now settled, it is immaterial to the real issue in this case, whether the defendants were or not riparian owners, whether they had obtained any franchises from the former police jury, and whether the space allotted to plaintiff was or not necessary to the ferry landing or to the conveniences of the public, and we may add that the defendants were without legal authority to raise the objection that plaintiff had not fulfilled his contract. Werges vs. Railroad Co., 35 Ann. 648.

Evidence on all these points was therefore manifestly irrelevant, and it was properly rejected.

Under these views we leave defendants without any law to support their contention, for, as stated in the first part of this opinion, all the principles of law applicable to their case were involved in their bills of exceptions.

Our examination of the testimony has satisfied us that plaintiff's complaint is well founded; that defendants have illegally encroached on a portion of the space allotted to him under his contract with the city, and we therefore conclude that the judgment appealed from is correct in all particulars.

Judgment affirmed.