ROGERS, Justice.
 

 On May 29, 1939, J. O. Evans acquired by purchase from Philip G. Cook two tracts of land designated as lots 1 and 2 in Section 13, Township 17 North, Range 10 West in Webster Parish. The tracts front on Lake Bistineau and embrace in the aggre
 
 *401
 
 gate about 98.5 acres. The vendor of Evans, through mesne conveyances, had acquired the land from the United States government.
 

 On May 31, 1941, Evans brought this suit to compel James Dugan to remove certain buildings erected by him on the shore of Lake Bistineau in front of Lot 2 and to prohibit Dugan from operating a commercial fishing camp in front of plaintiff’s property. Defendant filed an exception of no cause or right of action which was overruled. Defendant then answered and the cause was tried on the merits. Judgment was rendered in favor of defendant, rejecting plaintiff’s demands, and plaintiff has appealed.
 

 Lake Bistineau is a body of water situated in the northwestern portion of Louisiana forming the boundary line between the Parish of Bienville on the east, the Parish of Bossier on the west, and extending up into the Parish of Webster. At its northern end, the lake is entered by Bayou Dorcheat and at its southern end, the lake empties into Loggy Bayou which, in turn, empties into Red River. Sapp v. Frazier, 51 La.Ann. 1718, 26 So. 378, 72 Am.St.Rep. 493. In addition to the waters of Bayou Dorcheat, the lake is fed by the waters of Red Chute Bayou and other smaller fresh water streams.
 

 As shown by the opinion of this Court in Sapp v. Frazier, which was decided in 1899, the lake was navigable for steamboats for the first six months in the year and non-navigable for the remaining six months. Beginning in the summer and extending through the autumn, the greater portion of the lake bed was uncovered, the waters receding and draining off into Red River.
 

 The Legislature, by Act No. 43 of 1930, established the Lake Bistineau State Game and Fish Preserve out of Bayou Dorcheat and Lake Bistineau embracing the land along the bayou and the lake below mean high-water mark, and created the Lake Bistineau State Game and Fish Commission with power, under control of the Department of Conservation, to administer the Game and Fish Preserve and to make rules and regulations for its control. By Act No. 64 of 1942, the Legislature enlarged the powers of the Commission subject to the supervision and control of the Department of Conservation.
 

 Plaintiff alleges that Lake Bistineau is a navigable body of water and that its banks and bed belong to the State an,d are subject to use by the general public. That defendant has appropriated the bank of the lake to his private use, constructing thereon a permanent dwelling, a parking place for automobiles, a camp house, and is operating a commercial resort, renting boats and selling shiners for bait.
 

 Plaintiff alleges that defendant completely monopolizes the bank of the lake from the line of plaintiff’s property to the water line at low stage and up and down the lake for a distance of some 400 feet. That the defendant is not occupying this public place by virtue of a sale or a lease from the State and is a mere squatter thereon. Plaintiff alleges that he purchased the property fronting on Lake Bistineau, with the intention of dividing it into camp sites
 
 *403
 
 for sale, but that due to the illegal use of the bank of the lake by the defendant, he is unable to sell any of his lots and that as a riparian owner, suffering pecuniary loss, he is entitled to have the nuisance maintained by defendant abated. Plaintiff prays for judgment ordering the defendant to remove his buildings and permanently enjoining defendant from operating a commercial fishing camp on the shore of Lake Bistineau in front of plaintiff’s property.
 

 Defendant, in his answer, denies the .substantial allegations of plaintiff’s petition. He admits that Lake Bistineau is a navigable body of water and that the shores thereof belong to the State, but avers that the ownership of the State is subject to the provisions of Act No. 43 of 1930 creating the Lake Bistineau State Game and Fish Commission and making a game and fish preserve of the lake and its shores and placing the administration of the preserve under the State Game and Fish Commission and the Department of Conservation. Defendant alleges that under the powers granted the Commission he was given permission to occupy the premises upon which his improvements are located, which premises are under the control and supervision of the State, the Department of Conservation and the State Game and Fish Commission. Defendant avers that he is not a trespasser and his occupation of the premises is in furtherance of the public interest. He denies that his occupation of the premises is monopolistic or that it interferes in any way with the rights of the plaintiff. Defendant avers that on May 29, 1939, when plaintiff acquired the property described in his petition,, defendant was occupying, and had for some time previously occupied, the portion of the shore of the lake he is now using, and that plaintiff bought his property with full knowledge thereof. Defendant avers that his occupation and use of the portion of the shore of the lake owned by the State is “in furtherance of the public rights and conveniences of hunting and fishing and that on the contrary the plaintiff is operating a similar camp upon the banks of Lake Bistineau and near the camp of defendant and seeks himself to obtain a monopoly for himself of such service and business and exclude your defendant therefrom to his advantage.”
 

 The facts, as disclosed on the trial of the case, are as follows. In the year 1934, the defendant Dugan established a fishing camp on the shore of Lake Bistineau between low-water mark and high-water mark. He erected a one-story house measuring 28'x28' to which he attached a small porch. The house contains four rooms and is used as a dwelling by defendant, his wife and one child. A small garden, partly fenced, lies on the north side of defendant’s dwelling. A short distance south of the house in which defendant lives with his family is a cabin measuring 16'xl6' and containing two rooms. This cabin and a landing for boats is maintained by defendant for the use of the public. After defendant had cleared away the underbrush for that purpose, the parochial authorities constructed a parking place and built a road leading thereto which is also used by the general public.
 

 In the latter part of 1934 and the early part- of 1935, under the authority granted
 
 *405
 
 by section 12 of Act No. 43 of 1930, the Conservation Commission constructed a substantial earth dam across the old channel of Loggy Bayou. This resulted in the establishment of a lake covering 20,000 acres with an assured constant water level as compared with the fluctuating water level described in the case of Sapp v. Frazier.
 

 In 1940, the Legislature appropriated $100,000 to be used by the Conservation Department in repairing and improving the dam. This work was completed in November, 1941. The earth dam, with a concrete spillway, is one and one-half miles long and twenty feet high. The lake formed by the impounded waters is about thirty miles in length and its width varies from a few hundred feet to three’ miles.
 

 The establishment of the Lake Bistineau State Game and Fish Preserve and the construction of the dam and other improvements made in this Preserve by the Department of Conservation and the Commission, created for its administration, has undoubtedly brought about a general expansion of the activities for which the Preserve was established.
 

 C. O. Holland, who represented the Parish of Webster on the Lake Bistineau State Game and Fish Preserve, testified that the matter of supervising the shore line in each of the three parishes, which border the lake, was assigned to the member representing the parish on the committee; that as the representative of Webster Parish, he encouraged Dugan to establish his fishing camp for the public convenience. John L. Mclnnis, who succeeded Holland on the Commission, was the secretary of the Commission for 1940. He testified that at a meeting of the Commission held in his office, the case of Dugan, along with the cases of a number of other persons in the same situation, was discussed; that the members of the Commission went into the case of Dugan “rather thoroughly” because Holland had advised him of the arrangement entered into by him and L. A. Wimberly, the chairman representing the Parish of Bienville, with Dugan; that at that meeting' Mclnnis was authorized to issue on behalf of the Commission a permit to Dugan to operate a fishing camp for the convenience of the public. Mclnnis accordingly, on May 28, 1940, addressed a letter to Dugan informing him of the action of the members of the Commission and authorizing him to continue the operation of his fishing camp as a service to the general public. This permit so far as the record discloses has never been revoked.
 

 Defendant does not claim the exclusive right to use the premises occupied by him. He states that he has not hindered, and has no intention of hindering, the free use by plaintiff or the general public of any part of the shore of Lake Bistineau. It is true that the public can not use that part of the shore of the lake that is actually occupied by the small building used by defendant as a residence. But this does not seriously inconvenience the public. As a matter of fact it may be more desirable from the standpoint of the public for the defendant to maintain his residence there since it affords a measure of protection for persons using that portion of the shore of Lake Bistineau. No charge is
 
 *407
 
 made for the use of the space set aside for parking automobiles. The general public has full and free access to the premises at all times. Defendant is not a trespasser, nor does the camp operated by him in any manner constitute a public nuisance. On the contrary, as found by the trial judge, defendant’s camp is a public convenience instead of a public nuisance.
 

 The State is not a party to the suit and neither the State nor any of its agencies is complaining of the operation by defendant of his fishing camp on State property. As a matter of fact the Commission in charge of and administering the property for the State has permitted defendant to establish his camp and has encouraged him in his efforts to provide facilities for the better use and enjoyment of the premises by the general public.
 

 Plaintiff is not representing, and does not pretend to represent, the State or any of its agencies in his attempt to compel defendant to remove his buildings from the property of the State. Plaintiff'in his suit is merely asserting his individual rights. His objection seems to be that the occupation by defendant of the property of the State prevents him from selling his land adjacent thereto at a larger price than he could obtain for it if defendant’s fishing camp was abolished. The evidence relied on by plaintiff to support his objection is not convincing. Plaintiff’s land has a frontage on the lake of about three-quarters of a mile. He admitted he purchased the property for purely commercial purposes, with full knowledge of the conditions. To the north and a short distance from Dugan’s camp, plaintiff, formerly through Ware and now through Coker, is himself operating a fishing camp. This camp is on plaintiff’s property, but the boat landing which he operates in connection with the camp is located on state property. Except as a business competitor, Dugan’s camp in no way conflicts with plaintiff’s camp. Both camps, to the extent that they occupy public property under the express terms of the statute creating the Preserve, are subject to the supervision of the Commission.
 

 It is admitted that the fishing camp owned and operated by defendant does not occupy any portion of plaintiff’s property. The camp is located upon property owned by the State
 
 solely
 
 under the jurisdiction of the State or its agencies and subject only to the rights accorded by law to the public in public things, which, unless changed by law, are rights which must be respected.
 

 The Legislature by Act No. 43 of 1930, as amended by Act No. 64 of 1942, placed the administration and control of the territory comprising the Lake Bistineau State Game and Fish Preserve under the jurisdiction of the Lake Bistineau State Game and Fish Commission and the Department of Conservation with authority, among other things, to establish and regulate fishing camps within the Preserve.
 

 Plaintiff, as a riparian proprietor, has no right to appropriate to his exclusive use the shore of Lake Bistineau lying in front of his land, nor has he any private property right in the use thereof, which is public and under the administration and control of the state agencies designated in the legislative acts. Unless manifestly abused, the discretion of the Lake
 
 *409
 
 Bistineau State Game and Fish Commission and Department of Conservation in determining what are suitable and needed facilities to promote the public use and enjoyment of the area embraced within the Preserve is not a proper subject for judicial control or interference. The authority of the Commission and the Department of Conservation in this respect is not restricted by Article 455 of the Civil Code which declares that “the use of the banks of navigable rivers or streams is public,” and that “accordingly every one has a right freely to bring his vessels to land there,” etc. This general right must yield to the specific right granted the Lake Bistineau State Game and Fish Commission and the Department of Conservation to control and supervise the territory embraced within the Lake Bistineau State Game and Fish Preserve as established by Act No. 43 of 1930 and Act No. 64 of 1942. Whatever incidental damage may result to plaintiff or to other proprietors of lands bordering on the shore of the lake within the Preserve from the exercise by the designated agencies of their right to control and supervise the Preserve is damnum absque injuria. Pickles v. McLellan Dry Dock Company, 38 La.Ann. 412; Sweeney v. Shakspeare, Mayor, 42 La.Ann. 614,
 
 7
 
 So. 729, 21 Am. St.Rep. 400.
 

 The authorities relied on by plaintiff are not applicable to this case. They do not refer to cases which involve the powers of state agencies, such as the Lake Bistineau State Game and Fish Commission or the Department of Conservation, to regulate and control the use of a body of water within the limits of the territory over which the Legislature has given such agency full police and supervisory control.
 

 It appears from the evidence that the operation by defendant of his fishing camp does not deprive plaintiff of the free use of the shore of Lake Bistineau and plaintiff is not in any way hampered by defendant’s camp in his rights of fishing, boating, landing or traveling on or along the shore of the lake. In these circumstances, plaintiff has no right to ask that defendant be ejected from the premises he is now occupying and operating as a fishing camp on the shore of the lake.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 FOURNET, J., concurs in decree.