398 So.2d 519 (1981)
Samuel L. LIEBER
v.
Durward RUST.
No. 80-C-2514.
Supreme Court of Louisiana.
April 17, 1981.
Rehearing Denied May 29, 1981.[*]
*520 Frank S. Kennedy, Rellis P. Godfrey, Kennedy, Goodman & Donovan, Shreveport, for plaintiff-applicant.
Joseph L. Hargrove, Jr., Joseph L. Shea, Jr., Hargrove, Guyton, Ramey & Barlow, Shreveport, for defendants-respondents.
WATSON, Justice.[*]
This is a dispute between adjoining property owners on the shore of Cross Lake about the proper location of a pier and boathouse. Plaintiff, Samuel L. Lieber, filed suit when defendant, Durward Rust, commenced construction of a wharf which angles across the water in front of Lieber's property.
The trial court dismissed plaintiff's suit, and the Court of Appeal affirmed the judgment. Lieber v. Rust, 388 So.2d 836 (La. App. 2 Cir. 1980). A writ of review was granted to plaintiff. 395 So.2d 812 (La., 1980).
The shore area of navigable Cross Lake, the space between the water and the contour line, is a public thing. By Act 31 of 1910,[1] the legislature authorized sale of the lake bed from the State to the City of *521 Shreveport for use as a water reservoir. Act 39 of 1926[2] granted the City control of the shore area up to the 172 foot contour line.
Lieber and Rust own contiguous lots one and two in unit number two, Willow Ridge Subdivision. Each lot extends on the lake side to the 172 foot contour line, which is the line of demarcation between the private owners and the City. State v. Bozeman, 156 La. 635, 101 So. 4 (1924). The lots are subject to recorded title restrictions which provide in part that:
"Boat houses, fishing piers and other construction extending into Cross Lake shall be permitted to exist on, from, or connected to any lot with prior written approval of the Architectural Control Committee subject however to full compliance with all ordinances and regulations of the City of Shreveport."
By coincidence, Lieber and Rust are two of the three members of the Architectural Control Committee. There are no standards to govern this Committee's discretion. Approval of the Committee is by majority vote. According to Weyman Oden, Jr., the developer of the six lot subdivision and the third member of the committee, there are no specific standards for construction of piers and boathouses because:
"... The thought and idea of the whole thing was to encourage the use of materials on boathouses that would blend with the natural lake setting and surroundings." (Tr. 87)
Rust did not apply for approval of his boathouse by the Committee.
Shreveport Ordinance No. 40 of 1964 granted its Department of Public Utilities control of all improvements on Cross Lake and its shore. It provides:
"The property owners adjacent to Cross Lake shall have the exclusive right to the use of the area which abuts their property and lies between the 172 foot contour *522 line and the water level of Cross Lake, providing that all rules and regulations, restrictions and reservations, including waiver of any claims against the City of Shreveport, Louisiana, for injuries or damages, are agreed to by said property owners.
"Piers, boat houses and docks for the exclusive use of their owners will be authorized within the 172 foot contour line by permit only. These structures will be subject to the approval of the Department of Public Utilities and must be maintained in good repair.
* * * * * *
"Piers and wharves, stationary and/or floating, and other facilities extending into the Cross Lake reservoir will be limited to a maxium (sic) total length of not more than 300 feet, perpendicular to the water line, from the 172 foot contour line..."
The water line and the contour line tend to be parallel, although both are uneven lines. A concrete retaining wall marks the approximate location of the contour line.
On August 9, 1978, Rust acquired a permit for the construction of his boathouse and pier from Robert William Calhoun, the Superintendent of Cross Lake Patrol, by authority of the Department of Public Utilities. The patrol directed where the structure should be placed; construction was completed at that location. Rust's pier and boathouse are below the 172 foot contour line, entirely within the area owned by the city and completely outside the subdivision. If Lieber's property lines are extended past the 172 foot contour line into the, lake, a portion of the Rust pier is within their boundaries.
These lots are located on a concave curve of a shallow lake. Superintendent Calhoun testified that a permit was required, for the following purposes:
"To be sure that no one gets blocked off. And try to have it where each one can have access to the lake. See, you have a lot of lots that run in at an angle. Therefore, we have to turnwethey can't run down their line and straight out into the lake. If you did, there'd be a lot of people that wouldn't get access to the lake." (Tr. 177)
Bill Guin, civil engineer for the Department of Public Utilities responsible for the supervision of Cross Lake, testified that the city tried to create equity among the lot owners around this cove so that each could build a pier. "In so doing, I had to sacrifice perhaps a view." (Tr. 189)
Calhoun Allen, Commissioner of Public Utilities at the time the ordinance was passed, testified that this pier is not perpendicular to the water line or the contour line, but that section of the ordinance cannot be applied when the extended property lines intersect. The exact angle of the pier with the water or contour line is not in evidence; the exhibits indicate the variation from the perpendicular is not substantial.
Lieber's assignments of error raise three issues for decision:
(1) Is Rust required to remove his pier for failure to obtain approval of the subdivision's Architectural Control Committee?
(2) Was Rust's permit and construction in violation of Ordinance No. 40 either because (a) it is not perpendicular to the contour line or (b) it encroaches on Lieber's exclusive right to use the area in front of his property?
(3) Does Lieber have a predial servitude which entitles him to view Cross Lake without obstructions on the shore or water?

VIOLATION OF BUILDING RESTRICTIONS
The City has statutory authority to regulate the shore and bed of Cross Lake. This includes authority over the placement of piers in that area. However, the subdivision owners agreed that any piers constructed would also be approved by their representatives on the Architectural Control Committee. The purpose of this restriction was to prevent the construction of unsightly structures detracting from the ambiance of the area. However, Lieber *523 does not complain that the pier is an inferior structure, only that it is placed where he does not want it located. The City exercised its paramount right to dictate the location. There is no evidence that the Rust Pier and boathouse are offensive except for their placement. Plaintiff's complaint is not directed toward a question within the competence of the Architectural Control Committee. Therefore, Rust's failure to obtain approval of the Committee is immaterial.

VIOLATION OF SHREVEPORT ORDINANCE NO. 40 OF 1964
The placement of this boathouse is not arbitrary or capricious merely because it is not "perpendicular to the waterline, from the 172 foot contour line". Ordinance No. 40 of 1964. Because of the curvature of the lake, the piers cannot all be perpendicular to the water line or the contour line. Adding to the problem is the uneven line of the shore. The variation from the perpendicular here is a de minimus thing. Depending on the point of origination, plaintiff could be either helped or hurt by a more perpendicular structure.
The ordinance grants the property owners the exclusive right to use the property between the contour line and the water, but it is clear from the language that this right is subject to the City's regulation and control. The right of use in not unrestricted. The City could not grant the landowners an unsupervised use without violating its statutory mandate to protect the lake. Compare Evans v. Dugan, 205 La. 398, 17 So.2d 562 (1944).

SERVITUDE OF VIEW
Lieber contends that Ordinance No. 40 of 1964 created a predial servitude of view. LSA-C.C. art. 716.[3] However, there is no evidence that the City of Shreveport has established a servitude of view in favor of the landowners around the lake. View is a continuous, apparent servitude which can be established only by title, destination of the owner or acquisitive prescription. There is no evidence that the landowners have acquired a servitude of view. LSA-C.C. arts. 727,[4] 728,[5] 765.[6] Even if such a servitude were established, it would not necessarily apply to a structure in the adjacent lake. A building prohibition servitude, being continuous and nonapparent, can be established only be title. LSA-C.C. art. 766.[7] See Bernos v. Canepa, 114 La. 517, 38 *524 So. 438 (1905). Plaintiff is not entitled to an entirely unobstructed view of the lake. See LSA-C.C. art. 668.[8]
The city determines, upon request, where structures extending into Cross Lake will be located. Although there may have been other feasible locations for this boathouse, the city's placement was not arbitrary or capricious. Judicial interference is not warranted.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
NOTES
[*] DIXON, C. J., and BLANCHE, J., would grant a rehearing.
[*] Honorable Gerald P. Federoff participated in this decision as Associate Justice Ad Hoc in place of Associate Justice Fred A. Blanche, Jr.
[1] Act 31 of 1910 provides:

"Authorizing the Register of Land Office to sell and convey to the City of Shreveport, the bed of what is known as Cross Lake in the Parish of Caddo, and fixing the terms and conditions of such sale, reserving to the State of Louisiana all minerals and mineral rights on and under said lands.
"Section 1. Be it enacted by the General Assembly of the State of Louisiana; that in pursuance to due and legal notice published in the Parish of Caddo of the intention to apply for the passage of this law, due proof having been made thereof to this body; That the Register of the State Land Office be and he is hereby authorized and empowered as hereinafter provided to sell and convey to the City of Shreveport, a municipal corporation in the Parish of Caddo, all that portion of land belonging to the State of Louisiana in what is known as the bed of Cross Lake, particularly that portion of the bed of said lake embraced within the traverse lines thereof in Section 25, Township 18, north, Range 16 west; Sections 20, 21, 28, 29, 30, 31, 32 and 33 in Township 18 north, Range 15 west and Sections 5 and 6, 1 and 2 in Township 17 north, Range 15 west, and Sections 23, 24, 25, 26, 27, 34, 35, 36, Township 18 north, Range 15 west, and Sections 28, 29, 30, 31, 32, 33, 34 of Township 18 north, Range 14 west, and Sections 4, 5, 6 and 7 of Township 17 north, Range 14 west, for the purpose of enabling said city to provide a water supply of good, pure and wholesome water for the citizens of the City of Shreveport, Louisiana, as now constituted or hereafter extended reserving to the State of Louisiana all minerals and mineral rights on and under said lands.
"Section 2. Be it further enacted, etc., That immediately after the termination of the suit of the Cross Lake Shooting and Fishing Club, Plaintiff in Error, vs. The State of Louisiana, No. 443 of the October Term 1909 of the Supreme Court of the United States, in the event said suit shall terminate favorably to the State and its title to said lands herein above described involved in said suit be maintained, it shall be the duty of the Register of the Land Office to cause accurate surveys to be made of the bed of said lake, at the expense of the said City of Shreveport, and embrace within the traverse lines thereof to determine the acreage of said land, and on the payment to him, by the City of Shreveport or its legal representatives of the sum of One Dollar per acre for each acre of land so embraced within the traverse lines of said lake in the sections, townships and ranges mentioned, he shall convey to the said City of Shreveport the said lands above described, embracing what is now the unsurveyed lands in the bed of said Cross Lake, and thenceforth the said lands shall become vested in the said City of Shreveport for the purposes and subject to the conditions of this Act, and the net funds arising from said sale after payment of the fees of the Register of the Land Office and the cost, expenses and attorney's fees incurred by the State in the aforesaid suit to maintain the title of the State to said lands shall be placed to the credit of the Board of Commissioners of the Caddo Levee District.
"Section 3. Be it further enacted, etc., That the said lands so conveyed to the City of Shreveport shall be used by it as a reservoir or storing basin for water to be used by said city for the purpose of supplying itself and its citizens with a good and wholesome supply of water, and should the said City of Shreveport fail to utilize the said bed of said lake for said purpose within ten years from the date of the passage of this Act or afterward should ever cease to utilize it for said purpose, then the said land shall revert back and become the property of the State of Louisiana, subject to the repayment to the City of Shreveport of the purchase price but without any interest.
"Section 4. Be it further enacted, etc., That the City of Shreveport in the protection and conservation of its water supply is hereby granted full and plenary power over the said lake and may make such rules and regulations for the government thereof as its City Council may from time to time determine, and may enforce such rules and regulations by fine or imprisonment as is now provided for the enforcement of its ordinances under its charter and amendments thereto.
"Section 5. Be it further enacted, etc., That all laws or parts of law, contrary to or in conflict with this Act, be and the same are, hereby repealed."
[2] Act 39 of 1926 provides:

"To authorize and empower the City of Shreveport to adopt, exercise and enforce police and sanitary regulations and ordinances over the bed and waters of Cross Lake and the area surrounding same with its tributaries for a distance of five thousand feet from the 172 foot mean gulf level contour line of said lake for the protection of the same from pollution and contamination as a water supply for the City of Shreveport.
"Whereas due notice has been given of the intention to apply for the passage of this Act by publication for thirty days and proof has been made of said publication to Legislature as required by Article IV, Section 6 of the Constitution of 1921;
"Section 1. Be it enacted by the Legislature of Louisiana, That the City of Shreveport is hereby granted full power and authority to adopt and enforce all needful police and sanitary ordinances and regulations for the protection of the bed and waters of Cross Lake purchased from the State of Louisiana for a water supply and now in use as such from pollution and contamination from any source and is likewise granted similar power and control over the area surrounding said lake for a distance of five thousand feet from the Meander Contour Line, which extends to the 172 foot mean gulf level as well as over the streams and tributaries of said lake, so as to prevent its pollution, contamination or destruction by salt water, refuse, filth, or from any other cause that would in any manner whatsoever endanger or render harmful or unsanitary the use of the waters of the Lake by the citizens of the City of Shreveport. That the City shall have the right and authority through its Board of Health, Public Safety Department, Public Utilities Department, or otherwise, to inspect all of said property and the drainage area of said Cross Lake and to enforce its ordinances and regulations by fine or imprisonment through the proper Courts of the State of Louisiana."
[3] LSA-C.C. art. 716 prior to its 1977 amendment provided:

"Servitudes of view are of two kinds; one which confers the right of full view with the power of preventing one's neighbor from raising any buildings which obstruct it, and the other which gives an owner the right of preventing his neighbor from having any view or lights on the side on which their estates unite, or that he exercise these servitudes according to his title."
[4] LSA-C.C. art. 727 prior to its 1977 amendment provided in pertinent part:

"Servitudes are either continuous or discontinuous.
"Continuous servitudes are those whose use is or may be continual without the act of man.
"Such are aqueducts, drain, view and the like...."
[5] LSA-C.C. art. 728 prior to its 1977 amendment provided:

"Again, servitudes are either visible and apparent or nonapparent.
"Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct.
"Non-apparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height."
[6] LSA-C.C. art. 765 prior to its 1977 amendment provided:

"Continuous and apparent servitudes may be acquired by title, or by a possession of ten years. The public, represented by the various parishes in this State, may also in like manner acquire a servitude by the open and public possession and use of a road for the space of ten years, after the said road or servitude has been declared a public highway by the Police Jury, provided that such servitude so acquired shall not extend beyond the width of forty feet."
[7] LSA-C.C. art. 766 prior to its 1977 amendment provided:

"Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.
"Immemorial possession itself is not sufficient to acquire them.
"Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders."
[8] LSA-C.C. art. 668 provides in pertinent part:

"* * * Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage."