LTHIBODEAUX, Judge.
The defendants, William Kent Cutrer and Linda Arnold Cutrer, et al., contest a judgment from the trial court ordering the removal of a pier and boathouse from the lake adjacent to their property. The order was rendered upon the complaint of the plaintiffs, William D. Woodward and Elizabeth S. Woodward, et al., and the trial court’s determination was that the construction was in violation of a subdivision’s building restrictions. For the following reasons, we affirm the judgment of the trial court and enter judgment in favor of the plaintiffs.
I.

ISSUES

We have determined that the following issue encompasses defendants-appellants’ assignments of error on appeal:
1. whether building restrictions applicable to a waterside subdivision are inapplicable to construction of a wharf on an adjacent state-owned water bottom;
2. whether the amendments to the Cy-prien Estates Subdivision Restrictions were properly enacted by the defendants, William and Linda Cut-rer?
II.

FACTS

This matter stems from building restrictions of a subdivision on Prien Lake in Calcasieu Parish. The area now comprising the subdivision was at one time owned, in its entirety, by Elizabeth S. Woodward. In 1990, Mrs. Woodward divided the acreage into twelve individual lots, naming the development Cyprien Estates. In October 1990, Mrs. Woodward filed the Cyprien Estates Subdivision Restrictions into the public record. The building restrictions, relevant portions of which will be set [¡.forth below, provided that Mrs. Woodward retain approval rights to any plans *182 for construction on the subdivision’s lots. It also provided for amendment of the restrictions by a majority of the property owners.
Mrs. Woodward continued living at Cy-prien Estates, retaining Lot 5. Karl and Kathleen Boellert are residents of the home situated on Lot 6 and have lived in the subdivision since 1991. Lot 7 was sold to Kent and Linda Cutrer in October 1991. Each of these adjoining lots are on the waterfront of Prien Lake.
This matter arose when the Cutrers sought approval for the construction of a pier and boathouse in 1996. As is required by the building restrictions, the Cutrers applied for a permit for the construction from the Corps of Engineers. During the permitting process, Mrs. Woodward became aware of the Cutrers’ plans and indicated her disapproval of the proposed construction. According to the affidavit of Mrs. Woodward’s husband, William Woodward, he informed the Cutrers that the location of the proposed construction would interfere with the lakefront views of Lots 5 and 6. A new location was suggested for placement of the pier and boathouse.
In May 1996, the Cutrers attempted to amend the building restrictions, removing that portion of the restriction requiring Mrs. Woodward’s prior approval of construction plans. As is provided for in the restrictions, the amendment was approved by a majority of the subdivision’s property owners. The amendment was filed into the public record. The Woodwards and Boellerts contend they were not apprized of the amendment at the time the Cutrers were gathering support from the other residents.
The petition instituting this matter was filed in June 1996 by the Woodwards and Boellerts. The Cutrers, along with other residents signing the amended building restrictions, were named as defendants. Initially, the plaintiffs ^sought a declaration that the original building restrictions were in effect and a declaration that the amended restrictions were null. They further sought a permanent injunction against actions to deprive them of their property rights and damages they contend were associated with the conflict over the building of the boathouse and pier.[1]
In May 1997, the plaintiffs filed a supplemental petition, asserting that the pier and boathouse had been completed. Due to the construction, the plaintiff amended their plea, seeking a mandatory injunction and an order to move or remove the pier. They again asked to be compensated for injuries and damages related to the construction.
Both parties filed motions for summary judgment and supported the motions with documents related to the amendment of the restrictions and the planning and construction process. Following a hearing, the trial court granted the plaintiffs’ motion for summary judgment, finding that the building restrictions constituted real rights that required notice to the plaintiffs prior to amendment. The trial court or *183 dered that the pier be removed or moved to the location originally suggested by the Woodwards.
Jin.

LAW AND DISCUSSION

Restrictions’ Applicability to Adjacent, Government-Owned Water Bottoms
The defendants-appellants assert that the building restrictions are inapplicable to constructions on adjacent, government-owned water bottoms such as Prien Lake. They contend that Lieber v. Rust, 398 So.2d 519 (La.1981), stands for this proposition. In Lieber, the Louisiana Supreme Court considered a dispute over placement of a pier and boathouse on Cross Lake, a shoreline and water bottom controlled by the City of Shreveport. The property in the subdivision at issue in Lie-ber was controlled by title restrictions, one of which required approval of an architectural control committee prior to construction of piers and boathouses. The plaintiff filed suit against the defendant landowner due to construction of a pier and boathouse that he alleged obstructed his view. The defendant failed to seek prior approval by the architectural control committee. Although the opinion dealt primarily with the question of whether an adjacent property owner is entitled to an unobstructed view of the water, the supreme court also concluded that the defendant’s failure to follow the subdivision’s building restrictions did not require removal of the structure. Contrary to the assertion that Lieber stands for the proposition that building restrictions are inapplicable to adjacent government-owned water bottoms, the supreme court merely observed that the restrictions were concerned with the committee’s approval with the aesthetics and craftsmanship of proposed constructions. As the plaintiffs suit concerned only the placement of the structure, not its quality or appearance, the supreme court determined that the issue was not one over which the architectural control committee had control. Therefore, the court determined that the defendant’s “failure to obtain approval of the committee is 1 simmaterial.” Id. at 523. The supreme court did not indicate that agreements made between the property owners and memorialized in building restrictions cannot provide certain agreed-upon standards for the structures separately permitted and controlled by the relevant government entity. Therefore, we do not find the building restrictions in this case are, on their face, inapplicable to the adjacent government-owned water bottom.
Amendment of the Restrictions
Appellants, William and Linda Cut-rer, et al., assert that they properly amended the building restriction, as required by the provisions of the Cyprien Estates Subdivision Restrictions, by obtaining majority approval of the property owners. We disagree.
The developer, Elizabeth Woodward, wholly owned the property known as Cyprien Estates, prior to dividing the property into several lots for residential purposes. Mrs. Woodward established several restrictive covenants on the property, which were to “run with the land and shall be binding on all parties and all persons claiming under them for a period of 25 years from [the] date these covenants [were] recorded, after which time said covenants shall be automatically extended for successive periods of 25 years, unless revised as provided in [the Restrictions].” In the Subdivision Restrictions, there are a number of provisions that require the developer’s approval:
*184 14. No used materials shall be used in the construction of-the exterior or any budding other than used brick, without the written approval of Mrs. Elizabeth Shutts Woodward or her agent,
[[Image here]]
| fi24. Plans for construction of said boathouse will be only with the United Corp of Engineers permit and the developer’s approval,
[[Image here]]
27. Prior to construction of any nature, be it dwelling, out-building, fencing, boat houses, wharves or any re-modeling which tends to change the exterior appearance of any structure [sic]. Approval of said proposed construction shall be submitted to Mrs. Elizabeth S. Woodward, or her designee, by use of preliminary plans for approval. Said approval or rejection shall be given in a timely manner. Should said approval not be rendered within thirty (30) days, construction may commence.
Specifically, at issue in this case is Restriction No. 24, which prohibits the construction of a boathouse without Mrs. Woodward’s approval.
Defendants assert that Paragraph 4 of Restriction No. 38 permits amendment of any provision contained in the restrictions as long as a majority of the homeowners agree. Paragraph 4 of Restriction No. 38 states the following:
The above restrictive covenants may be modified, extended, amended, changed or altered at any time by and with the written consent of the record owners of a majority in number of lots in this subdivision.
Utilizing this provision, the Cutrers convinced the majority of the property owners in the subdivision to amend the Restrictions so that the disputed amendment reads as follows:
NOW THEREFORE, appears [sic] do hereby amend the restrictive covenants affecting Cyprien Estates, recorded in Conveyance Book 2216 at page 15, so as to delete therefrom paragraph 14 and 27 and to amend Paragraph 24 to read as follows:
24. Construction of said boathouse will be with the United States Corps of Engineers permit only.
We agree with the defendants that a majority vote of the homeowners, with written consent, may “modify, extend, amend, change, or alter” the restrictive |7covenants. However, this provision does not permit termination of restrictions. We find that defendants’ “amendment,” deleting completely paragraphs 14 and 27 and eliminating Mrs. Woodward’s approval for boathouse construction in paragraph 24 serves to terminate, rather than merely modify, the restrictive covenant.
Throughout the Restrictions, Mrs. Woodward requires her approval for various changes or additions to the property as demonstrated above. We find it difficult to believe that the developer, once she received notice[2] of the proposed amendment, would permit an amendment that would altogether eliminate her approval of houseboat construction, having the effect of terminating the restriction. We find that in eliminating her approval, defendants have circumvented the whole intent of creating building restrictions. “Building restrictions may impose on owners of immovables affirmative duties that are reasonable and necessary for the mainte *185 nance of a general plan.” La.Civ.Code. art. 778. (Emphasis added).
Termination of a restrictive covenant is not provided anywhere in the Cyprien Estates Subdivision Restrictions. Since we are provided no guidance on the issue of termination in the act, we must refer to the Louisiana Civil Code for resolution of this matter.
Under Louisiana Civil Code article 780, “Amendment and Termination of Building Restrictions,” [b]uilding restrictions may be amended, whether such amendment lessens or increases a restriction, or may terminate or be terminated, as provided in the act that establishes them. In the absence of such a provision, building restrictions may be amended or terminated for the whole or a part of the restricted area by agreement of owners representing more than one-half of the land |sarea affected by the restrictions, ... “if the restrictions have been in effect for at least fifteen years,.... ” (Emphasis added).
As previously stated, we find no provision that permits termination of the restrictions. Defendants may argue that the modification provision is inclusive of termination; however, “[tjermination and amendment of building restrictions are generally different and distinct matters.” Mackey v. Armstrong, 30,054, p. 2 (La. App. 2 Cir. 12/30/97); 705 So.2d 1198, 1199. Nevertheless, even if this court could find support for such termination, the restrictions have not been in existence for at least fifteen years.
The Cyprien Subdivision Restrictions were established on October 9, 1990. Commencement of this action began on July 17, 1996, when plaintiffs sought declaratory judgment requesting the court to declare the original Subdivision Restrictions as applicable and the amendments null and void. In 1996, the Restrictions had not been in effect for fifteen years. Furthermore, fifteen years has not passed to this date. Therefore, we find that defendants were not entitled under the Subdivision Restrictions to terminate the provision requiring developer’s approval for construction of a boathouse. Article 780 of the Civil Code prevents termination of building restrictions, which have not existed at least fifteen years.
Plaintiff, Elizabeth Woodward, established in the Subdivision Restrictions that the restrictive covenants run with the land for twenty-five years, in successive twenty-five year periods, unless it has been revised. This court cannot ignore the clear intentions of the developer as outlined in the Restrictions. Further, we find that defendant’s sought to remove the prior approval provision because defendants believed that Mrs. Woodward not approve the construction. Although Mrs. Woodward disagreed with the construction of the boathouse at its current | location, she did propose another possible site on the Cutrers’ property for the pier and boathouse. Thus, we find that Mrs. Woodward was not unreasonable as to defendant’s construction of the boathouse.
IV.

CONCLUSION

For the above reasons, the judgment of the trial court is affirmed at appellants’, William Cutrer and Linda Arnold Cutrer, et al, costs.
AFFIRMED.
AMY, J., DISSENTS AND ASSIGNS WRITTEN REASONS.

. The defendants responded to the petition with a Peremptory Exception of No Cause of Action, Failure to Join an Indispensable Party, and Declaratory Exception of Lack of Subject Matter Jurisdiction. The trial court granted the exception of peremptory exception of no cause of action in part, but denied the exception insofar as it related to claims of interference with drainage and issues related to restrictive covenants. The granting of the partial exception of no cause of action was later reversed on appeal, with a panel of this court recognizing that, at that time, no action existed for partial exception of no cause of action. Woodward, v. Cutrer, an unpublished writ dated January 24, 1997 and bearing the docket number W96-1670.

. Mrs. Woodward asserted at trial that she, as the developer and a resident, was never given notice of the proposed amendment.